Don Bivens (005134)
Jeffrey Willis (004870)
Courtney Henson (030825)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona  85701-1630
Telephone:  520-882-1200
Facsimile:  520-884-1294
E-Mail: dbivens@swlaw.com
        jwillis@swlaw.com
        chenson@swlaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tucson Embedded Systems, Inc., an Arizona Corporation, <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> Turbine Powered Technology, LLC, a Louisiana Limited Liability Company, <br><br> Defendant/Counterclaimant. | NO.  14-cv-1868-TUC-BGM <br><br> **PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT OR, ALTERNATIVELY, FOR PRELIMINARY INJUNCTIVE RELIEF** <br><br> Assigned to Hon. Bruce G. Macdonald |

**A.      SUMMARY OF THE REQUESTED RELIEF**

This motion concerns 24 custom-designed control systems built in Tucson by Plaintiff Tucson Embedded Systems, Inc. ("Plaintiff"), and delivered to Defendant Turbine Powered Technology, LLC ("Defendant") in Louisiana.  The issue is which party is entitled to possession of the 24 control systems pending final judgment.

Plaintiff developed the control systems after two years of research and development costs exceeding $4 million.  Aff. of David Crowe ¶ 3, attached hereto as Exhibit "1".  Certain aspects of Plaintiff's controls systems are trade secrets and certain software is protected by federal copyright, all as supported by Plaintiff's Verified

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701
602.382.6000

Complaint.  Defendant contracted for **24** of Plaintiff's proprietary control systems built to Defendant's specifications for use with gas-powered turbine engines.  *Id.* at ¶ 2.

As detailed below, the parties' contract states that title to any goods or services provided by Plaintiff "shall not pass to [Defendant], notwithstanding delivery thereof, but shall remain vested in [Plaintiff] until the purchase price of the Products is paid in full." Defendant made the required down payment, accepted delivery of the 24 control systems, then defaulted in its payment obligations under the contract.  Defendant still owes Plaintiff at least $509,603.68, plus interest and attorneys' fees, under the contract.  The contract provides that if Defendant defaults on its payment obligations, Plaintiff is authorized to repossess all goods and services, and to retain all payments made.

Defendant has refused to return any of the 24 control systems pending final judgment.  *Id.* at ¶ 12.  Thus, Plaintiff seeks a declaratory judgment to enforce the contract declaring:

> (1)  Plaintiff's immediate right to possession of all 24 control systems, including related software and materials.
>
> (2)  Defendant's immediate obligation to cease using the control systems, and to surrender possession of the control systems to Plaintiff.

As an alternative to enforcing the contract, Plaintiff asks the Court to issue a preliminary injunction, enjoining Defendant from:

> (1)  using or accessing, or
>
> (2)  allowing any third party to use or access,

any of Plaintiff's 24 control systems, or related software and materials, pending final judgment.

This motion incorporates by reference Plaintiff's Verified Complaint, and for sake of efficiency will not restate the allegations of the Complaint at length in this motion. Plaintiff requests a speedy hearing for declaratory judgment as provided by Federal Rule of Civil Procedure 57.

///

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701
602.382.6000

19586808.2

## B.   DEFENDANT CAN READILY RETURN PLAINTIFF'S CONTROL SYSTEMS

Each of Plaintiff's 24 control systems consists of a silver box that houses digital components and circuit boards sometimes called an IDEC control.  A photograph of the IDEC control system is attached hereto at <u>Exhibit "2"</u>.  The silver box connects to a turbine engine through two cables.  A photograph of the turbine engine is attached hereto at <u>Exhibit "3"</u>.  The process of connecting or disconnecting a silver box and its cables from a turbine engine takes a qualified technician about 15 minutes.  Aff. of David Crowe ¶ 13.  The point is that Plaintiff's control systems stand separate and apart from a turbine engine and are easily detached.

Each of Plaintiff's 24 control systems also connects to a server that runs Plaintiff's copyrighted software called "Gas Boss" (or "Generator Controller").  The Gas Boss program monitors the performance of a turbine engine in real time, taking multiple readings from the engine every 20 milliseconds.  Gas Boss then projects a dashboard of instrument readings onto a computer screen for easy viewing by a technician.  A photograph of side-by-side computer screens reflecting the Gas Boss dashboard is attached hereto at <u>Exhibit "4"</u>.  Here too, disconnecting the Gas Boss hardware and software is a simple matter of unplugging cables from the silver box.  Aff. of David Crowe ¶ 14.

Paragraph 27 of the Verified Complaint specifies by separate identification number each of the 24 IDEC controls, each of the silver boxes, and each of the servers delivered to Defendant and subject to this motion.  The locations of all 24 control systems are known and accessible.  Aff. of David Crowe ¶ 15.

Defendant informs Plaintiff that 12 of the control systems are sitting in their original boxes, unopened, on shelves at the Defendant's offices in Franklin, Louisiana.  There are no impediments whatever to Defendant's immediate return of these 12 control systems.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

19586808.2

Defendant informs Plaintiff that another 6 of Plaintiff's control systems are apparently connected to turbine engines also on site at the Defendant's offices in Franklin, Louisiana. These six turbine engines sit idle. They are not being used by anyone. As just described, it would take about 15 minutes apiece to disconnect these 6 control systems from the turbine engines, after which there are no impediments to their return.

Defendant informs Plaintiff that the last 6 of Plaintiff's control systems are attached to turbine engines being operated in Oklahoma for use in fracking underground for natural gas. Plaintiff lacks full information about these 6 control systems. It is unclear whether these control systems are being used on turbines owned by the Defendant, or by a third party. Defendant's response to this motion should shed more light. Under the contract, however, Defendant has no right to use, and no right to assign, lease or sell Plaintiff's control systems for use on any turbine engine. These last 6 control systems can also be disconnected in 15 minutes. Again, there is no impediment to their return. Defendant is free to use other control systems to operate these 6 Oklahoma turbine engines. But Defendant has no legal right to use Plaintiff's controls.

## C.   THE CONTRACT BETWEEN THE PARTIES ENTITLES PLAINTIFF TO POSSESSION OF THE CONTROL SYSTEMS

The contract between the parties is described in Count One of the Verified Complaint. In pertinent part, on or about October 4, 2013, Plaintiff and Defendant entered into a contract under which the Plaintiff agreed to provide, and Defendant agreed to pay for, the following goods and services:

| 10/4/2013 Contract | |
|---|---|
| 12 New Power Generation Control Systems | $     711,600.00 |
| 12 Upgrades to Existing Power Control Systems | $     150,000.00 |
| Development Consulting Fee | $     128,000.00 |
| Consulting Fees Sept thru Dec 2013 | $     128,000.00 |
| **Total** | **$ 1,117,600.00** |

The full terms of the contract are detailed in a three-page purchase order, with two attachments identified on page 3:

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

- 4 -

19586308.2

"Attachment 1 -- Quantity Pricing Letter"

"Attachment 2 -- Terms and Conditions"

A true and correct copy of the contract is attached hereto as <u>Exhibit "5"</u>.  The contract was sent by email on October 4, 2013, from Plaintiff's Contracts Administrator, Cindi Starner, to Craig Ryan, President of Defendant Turbine Powered Technology.

The following contract provisions are relevant to this motion:

   **1. Application:**  These Standard Terms and Conditions apply to any sale of the I-DEC product, parts, materials and related services (the "Products") by Tucson Embedded Systems, Inc. ("TES") to any TES Customer (the "Buyer").  *Acceptance of these Standard Terms and Conditions by any Buyer is an express condition of any such sale.*  IDEC Terms & Conditions, ¶ 1 (emphasis added).

   **8. Title Retention:**  Title or ownership of the Products shall not pass to the Buyer, notwithstanding delivery thereof, but shall remain vested in TES [Plaintiff] until the purchase price of the Products is paid in full.

   As security for the full payment of the purchase price of the Products, the Buyer hereby grants to TES, and TES hereby reserves, a purchase money security interest and charge in the Products . . .

   Upon any default by the Buyer, and subject to applicable law, TES may repossess and deal with the Products as it shall see fit and retain all payments which have been made by the Buyer for the account of the purchase price as liquidated damages.

   Upon any such realization of security, the Buyer shall remain liable for any deficiency in the purchase price and shall reimburse TES for all costs and expenses, including reasonable legal fees, incurred in enforcing its rights.  All rights and remedies of TES are cumulative and in addition to those available at law or in equity.  IDEC Terms and Conditions ¶ 8.

   **20. Governing Law:**  The sale of the Products and this Agreement are and shall be governed by the laws of the State of Arizona and the laws of the United States of America as applicable therein.  IDEC Terms & Conditions ¶ 20.

   **21. Confidential Information.**  Proprietary or confidential information disclosed for the supply of any Products may not be used or disclosed by the recipient, the Buyer, or TES other than for the express purpose for which is was disclosed. . . . IDEC Terms and Conditions ¶ 21.

   **22. Assignment:**  Neither party may assign all or any portion of the TES Agreement without the prior written consent of the other party.  IDEC Terms & Conditions ¶ 22.

Defendant's unverified Answer to Plaintiff's Verified Complaint tries to suggest that Exhibit 5 is not the contract between the parties.  But Defendant never objected to any of the terms of the contract.  And, except for failing to pay the full amount due, Defendant

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

19586808.2

conducted itself in full accord with the contract, including all required down payments. Defendant accepted delivery of the 24 control systems, then breached its obligation to pay the remaining balance due.  Aff. of David Crowe ¶ 7-8.

Defendant's position that Exhibit 5 was sent and received but that somehow it does not reflect the terms of the agreement is a non sequitur.  Because the subject matter of the contract is one for goods, the Uniform Commercial Code ("U.C.C.") governs the sale. *See* U.C.C. § 2-102 (as codified at Title 47 of the Arizona Revised Statutes).  Section 2-207 states that between merchants, additional terms become part of the contract, except in a few limited circumstances that do not apply here.

One of the principal purposes of section 2-207 is to clarify the terms of the contract "where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." *See* Uniform Commercial Code Comment to § 2-207 ¶ 1.  The official comment further states that:

> In many cases, as where goods are shipped, accepted and paid for before any dispute arises, there is no question whether a contract has been made.  In such cases, where the writings of the parties do not establish a contract, it is not necessary to determine which act or document constituted the offer and which the acceptance.  The ***only*** question is what terms are included in the contract, and subsection (3) [which states: "***Between merchants such terms become part of the contract unless . . . Notification of objection to them has already been given or is given within a reasonable time after notice of them is received***"] furnishes the governing rule.

*Id.* at ¶ 7 (emphasis added).

That is precisely the situation that exists in the case at hand.  Both parties are merchants, who informally agreed to a large and complex sale and purchase.  Exhibit 5 was sent by Plaintiff as the "formal memoranda embodying the terms so far as agreed upon and adding terms not discussed" including its standard Terms and Conditions, which clearly state that they "apply to any sale of the I-DEC product, parts, materials and related services."  *Id.* at ¶1; IDEC Terms & Conditions, ¶ 1; U.C.C. § 2-207; U.C.C. § 2-104.  If

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

- 6 -

Defendant did not wish these terms to become the terms of the contract, Defendant could have and should have notified Plaintiff of its objection to them.   Defendant's baseless assertion that Exhibit 5 is not the contract therefore undermines the very purpose of Section 2-207.

Under the unambiguous terms of the contract, the control systems remain Plaintiff's property.   The U.C.C. explicitly states that regardless of any formal written acceptance of Plaintiff's offer, "conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract."   *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir. 1986) (*citing* U.C.C. § 2-207(3)).   Acceptance and use of the control systems is the most obvious form of conduct that manifests recognition of the existence of the contract.

Moreover, Plaintiff retains a purchase money security interest in the control systems pursuant to Paragraph 8 of the IDEC Terms and Conditions, and that security interest was perfected by filing a financing statement with the Louisiana Secretary of State on January 27, 2014.   A true and correct copy of the Financing Statement is attached hereto at <u>Exhibit "6"</u>.   Under the Security Agreement, in the event of any default by buyer, Plaintiff has the right to "repossess and deal with the Products as it shall see fit . . ." IDEC Terms & Conditions, ¶ 8.

Defendant has not produced, nor shared the terms of any supposedly different contract.   Aff. of David Crowe ¶ 11.   Accordingly, the record leaves no serious room for doubt that Exhibit 5 reflects the terms of the contract between Plaintiff and Defendant, and that under the clear terms of the contract, Plaintiff has the right to possession of the control systems.

### D.   THE LEGAL BASIS FOR THE REQUESTED DECLARATORY JUDGMENT

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

Snell & Wilmer

L.L.P.

LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

19586808.2

relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

To be granted declaratory relief, Plaintiff must show that (1) an actual, justiciable controversy exists between the parties over the right to possession of Plaintiff's control systems; (2) that Plaintiff has a legal, protectable interest in its control systems; and (3) the pleadings present facts showing the Plaintiff has a present legal right against Defendant with respect to which the Plaintiff may be entitled to some consequential relief. *See Planned Parenthood Center of Tucson, Inc. v. Marks*, 17 Ariz. App. 308, 497 P.2d 534 (Div. 2 1972); *Riley v. Cochise Cnty.*, 10 Ariz. App. 55, 59, 455 P.2d 1005, 1009 (1969); Ariz. Rev. Stat. § 12-1831, et seq.

To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, the dispute must be definite and concrete, touching the legal relations of parties having adverse legal interests; the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)

The actual, justiciable controversy here is apparent. Defendant is in possession of Plaintiff's property and Plaintiff's trade secrets and copyrights are at risk because of this wrongful possession. The terms of the parties' contract are straightforward. Absent Defendant's payment in full, which has not been made, Plaintiff is entitled to possession of all 24 control systems.

There is no room for Defendant to argue that partial payment somehow entitles it to partial ownership or use of a few of the control systems. The contract explicitly provides otherwise. Why? Because the pricing in the contract is based on economies of scale for the manufacture of *24* control systems. Plaintiff would never have manufactured or sold an individual control system, or less than 24 systems, for 1/24 of the total contract price. Aff. of David Crowe ¶ 16. That is why the contract requires payment in full before Defendant acquires title or ownership rights to any single control system.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

- 8 -

19586806.2

This concept of higher prices for a lesser order, and lower prices for a greater order, is also born out in the "Quantity Pricing Letter", which is Attachment 1 to the contract, and reflects decreasing prices for increasing quantities to be ordered by Defendant.

In sum, Plaintiff has a legal, protectable interest in its control systems and has a present legal right against Defendant to regain possession of its property.  The evidence satisfies all requirements for this Court to order the requested declaratory relief.  Plaintiff requests the Court to enter a judgment to enforce the contract declaring:

      (1)      Plaintiff's immediate right to possession of all 24 control systems, including related software and materials.

      (2)      Defendant's immediate obligation to cease using the control systems, and to surrender possession of the control systems to Plaintiff.

## E.      THE LEGAL BASIS FOR THE REQUESTED ALTERNATIVE INJUNCTIVE RELIEF

Alternatively, Plaintiff is entitled to preliminary injunctive relief, enjoining the Defendant from:

      (1)      using or accessing, or

      (2)      allowing any third party to use or access,

any of Plaintiff's 24 control systems, or related software and materials, pending final judgment.

A party seeking a preliminary injunction may establish *either*: "1) probable success on the merits and the possibility of irreparable injury; *or* 2) the presence of serious questions and that the balance of hardships tips sharply in favor of the moving party." *Arizona Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 12, 219 P.3d 216, 222 (Ct. App. 2009) (adopting a "sliding scale" to interpret the traditional four criteria for preliminary injunctions) (internal citations omitted).   Under either test, Plaintiff is entitled to injunctive relief.

///

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701
602.382.6000

19586806.2

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
602.382.6000

1

2

      **1.**    **The evidence shows a strong likelihood that Plaintiff will succeed on the merits of its contract claim and its unjust enrichment claim.**

3

4

5

6

7

8

9

10

11

12

13

14

15

     On the breach of contract claim, it is undisputed that Plaintiff sent Exhibit 5 to Defendant on October 4, 2013, which contains clear and unambiguous terms of a contract. It is also undisputed that Defendant accepted the products that were the subject of Exhibit 5 without qualification or objection which, under the U.C.C., is a definite and seasonable expression of acceptance of Plaintiff's terms of the contract. *See e.g. Coastal & Native Plant Specialties, Inc. v. Engineered Textile Products, Inc.*, 139 F. Supp. 2d 1326, 1333 (N.D. Fla. 2001) (where buyer's purchase order and seller's counteroffer did not in themselves create a contract, performance by both parties, including delivery of and payment for goods, constituted "conduct which recognize[d] the existence of a contract," and thus established a contract under the Uniform Commercial Code.). Moreover, Plaintiff's offer expressly made acceptance of it conditional on assent to terms of its offer. *See* U.C.C. 2-207; IDEC Terms and Conditions ¶ 1 (stating "[a]cceptance of these Standard Terms and Conditions by any buyer is an express condition of any such sale.").

16

17

18

19

20

21

22

23

     Even without reliance on the contract, the elements of Plaintiff's unjust enrichment claim are plainly satisfied. Plaintiff need only show: (1) that Defendant has been enriched; (2) that Plaintiff has been impoverished; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy. *Trustmark Ins. Co. v. Bank One Ariz.*, N.A., 202 Ariz. 535, 541, ¶ 31, 48 P.3d 485, 491 (App. 2002) (citing *City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984)).

24

25

26

27

28

     Defendant has been enriched by its retention of Plaintiff's 24 control systems without payment for them, as well as by gaining access to Plaintiff's trade secrets and copyrighted intellectual property that may now be reverse engineered for Defendant's benefit. This enrichment comes directly at the expense of Plaintiff. There is a complete absence of justification for Defendant's enrichment, because by any interpretation of the

law, Plaintiff is entitled to compensation for its control systems or, alternatively, entitled to their return.  And finally, if the Court does not permit Plaintiff to recover under any other legal theory alleged in the Verified Complaint, then Plaintiffs will be left without a remedy at law.

Thus under both Counts 1 and 2 of the Verified Complaint, Plaintiff has demonstrated a strong likelihood of success on the merits, and at the very least the presence of serious questions, thereby satisfying the first prong of either test for preliminary injunctive relief.

### 2. The balance of hardships tips sharply in Plaintiff's favor and Plaintiff may be irreparable injured if Defendant is not enjoined.

The balance of hardships also tips sharply in Plaintiff's favor if Defendant is not enjoined from using or accessing, or allowing any third party to use or access, Plaintiff's control systems.  Plaintiff is informed and believes that Defendant has already and will continue to reverse engineer its control systems—control systems in which it has invested over $ 4 million.  Aff. Of David Crowe ¶ 17.  It is manifestly unjust for Defendant to have obtained Plaintiff's control systems without payment—but this injustice is significantly compounded by Defendant's continued access and potentially reverse engineer Plaintiff's control systems.  Plaintiff is at serious risk of losing the substantial value of its investment in the control systems if the Court does not grant this preliminary injunctive relief.  Because this proprietary information is critical to the business structure and success of Plaintiff, Plaintiff may be irreparably injured as a result of Defendant's reverse engineering if Defendant is not enjoined.  Aff. Of David Crowe ¶ 4, 17.

On the other hand, Defendant will suffer minimal hardship if the 24 control systems are returned to Plaintiff.  Indeed, Defendant has never expressed that it would experience any prejudice by returning Plaintiff's control systems, except the "prejudice" of not being able to keep and use Plaintiff's control systems without paying for them.  Defendant remains free to use any other control system it wants on its turbine engines.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701
602.382.6000

19586308.2

1  Plaintiff is also prepared to post a reasonable bond pursuant Federal Rule of Civil

2  Procedure 65(c) in an amount that the Court deems proper.  In the event that the Court

3  finds that Defendant was wrongfully enjoined, Defendant will likely only suffer minimal

4  damages given that it can use any number of control systems as an alternative to

5  Plaintiff's.  Accordingly, Plaintiff respectfully requests a bond in the amount of $500, or

6  less.

7  **F.     CONCLUSION**

8  For all these reasons, Plaintiff seeks a declaratory judgment to enforce the contract

9  declaring:

10  (1)  Plaintiff's immediate right to possession of all 24 control systems,

11  including related software and materials.

12  (2)  Defendant's immediate obligation to cease using the control systems,

13  and to surrender possession of the control systems to Plaintiff.

14  As an alternative to enforcing the contract, Plaintiff asks the Court to issue a

15  preliminary injunction based on unjust enrichment, enjoining Defendant from:

16  (1)  using or accessing, or

17  (2)  allowing any third party to use or access,

18  any of Plaintiff's 24 control systems, or related software and materials, pending final

19  judgment.

20  DATED this 25th day of June, 2014.

21  SNELL & WILMER L.L.P.

22

23  By:/s/  *Courtney L. Henson*

24  Don Bivens
    Jeffrey Willis

25  Courtney Henson
    One South Church Avenue

26  Suite 1500
    Tucson, Arizona  85702-1630

27  Attorneys for Plaintiff

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701
602.382.6000

19586808.2

- 12 -

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on June 25, 2014, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and delivery to the following ECF registrants.

3

4

Peter Akmajian
Thomas D. Laue
Jeanna Chandler Nash
Udall Law Firm, LLP
4801 E. Broadway Blvd., Suite 400
Tucson, AZ  85711
Attorneys for Turbine Powered Technology, LLC

5

6

7

8

By s/ *Clarrissa Palma*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19586308.2